Argued and submitted March 16, reversed and remanded August 8, 1984

## BOB BARNES REALTY, INC.,
*Respondent,*

*v.*

## MOORE,
*Appellant.*

(C8-909; CA A28805)

685 P2d 490

Paul J. Lipscomb, Salem, argued the cause for appellant. With him on the brief was Blair, MacDonald, Jensen & Lipscomb, Salem.

Scott McArthur, Monmouth, argued the cause for respondent. On the brief was John L. Snyder, Monmouth.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff, a real estate brokerage firm, brought an action to recover a commission that it claims to have earned on a real estate listing agreement entered into on July 28, 1980, between plaintiff and defendant. The trial court, sitting without a jury, found for plaintiff, and defendant appeals. We reverse and remand.

On October 8, 1980, prospective buyers executed an earnest money agreement offering to purchase defendant's property. It provided:

> "* * * Date of closing on or before Nov. 15, 1980 * * * or as soon as this cash can become available subject to closing on 980 Kelowna Ct [Woodburn] from FMHA."

On October 14, 1980, defendant made a counteroffer calling for acceptance within three days. Four days later, on October 18, the buyers tendered their acceptance of the counteroffer. Notwithstanding that the counteroffer had expired, on October 30, 1980, the buyers and defendant executed an addendum to the October 8, 1980, earnest money agreement increasing the required down payment. On November 13, 1980, plaintiff's salesperson requested defendant's signature on another addendum, which stated:

> "Due to problem's [sic] concerning assumption papers of DVA loan and closing of buyer's 980 Kelowna Ct., Woodburn, OR property, the closing date is hereby extended to November 28, 1980."

Defendant rejected the extension and communicated that to plaintiff through a letter, which stated:

> "Since the time extension was never agreed to, I will base cancellation on that. Due to no fault of either party, the closing date on the earnest money was not met; therefore it is null and void."

On December 8, 1980, plaintiff made written demand for the commission sought in this action. On January 16, 1981, the sale of the Woodburn property closed, thereby making funds available to the buyers, who were then financially able to perform in accordance with the terms of the earnest money agreement. Defendant refused to sell on the ground that the buyers had failed to meet the November 15, 1980, closing date. Thereafter, buyers filed, and later dismissed, a suit for specific

performance. On September 1, 1981, defendant sold the property to the same buyers at a higher price and on different terms without the assistance of a real estate broker.[1] On May 31, 1983, the trial court entered judgment in this case awarding plaintiff damages in the amount of $2,400, plus attorney fees, and found that "defendant breached his Earnest Money agreement with his buyer and therefore with the plaintiff."

■ Defendant contends that plaintiff is not entitled to a real estate commission, because the negotiations between buyers and defendant never ripened into a valid contract. He argues that his counteroffer required buyers' acceptance within three days from its date and that it was not accepted until one day after it had expired. We conclude that, by executing an addendum to the October 8 earnest money agreement on October 30, defendant waived the three-day limitation on his counteroffer.

■ His second position is that, assuming that the counteroffer was properly accepted, the earnest money agreement expired on November 15, two months before the buyers became ready, willing and able to perform on January 16, 1981. We also reject that contention. The earnest money agreement, by its terms, provided that the transaction could be closed after November 15, when cash became available from closing the Woodburn transaction.

■ However, we also reject plaintiff's argument that the transaction could be closed at any time in the future. Such a literal reading of the earnest money agreement would produce an absurd result. Further, plaintiff's request for an extension of the earnest money agreement demonstrates that even it did not so interpret the language of the earnest money agreement. In addition, the listing agreement contained a provision whereby defendant agreed to allow plaintiff a "reasonable time after termination of this contract to close any deal on which earnest money is then deposited." The listing agreement terminated on November 15, 1980, and the transaction had not closed. In order for plaintiff to be entitled to a commission under the terms of the listing agreement, the

---

[1] The agreement also provided that seller would pay a commission on any sale made by seller to a buyer introduced to seller by plaintiff within 90 days after termination of the agreement. The sale by defendant to the Weavers occurred more than 90 days after the listing agreement had expired.

pending transaction only had to close within a reasonable time after the November 15, 1980, expiration date.

Therefore, the ultimate question is whether cash from closing the Woodburn transaction became available within a reasonable time after the listing agreement expired. Whether any particular period of time is a reasonable one is a question of fact depending on the intent of the parties. *Cf. Waverly Const. Co. v. Gold Invest Co.,* 60 Or App 101, 103 n 1, 652 P2d 880 (1982). Because the trial court did not pass on the issue of what constitutes a reasonable time to close after expiration of the listing agreement, we remand this case for consideration of the parties' intent on this subject and a determination of whether, in fact, buyers were ready, willing and able to perform the agreement within a reasonable time after November 15, 1980. *See Parker v. Perrin,* 253 Or 552, 554, 451 P2d 49, 456 P2d 506 (1969).

Reversed and remanded.